# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GLOBAL PETROMARINE, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | No. 06-0189-CV-W-FJG |
| ) | |
| G.T. SALES & MANUFACTURING, INC., ) | |
| d/b/a HEWITT, U.S.A. ) | |
|     Defendant/Third-Party Plaintiff, ) | |
| vs. ) | |
| ) | |
| HBD INDUSTRIES, INC. ) | |
|     Third-Party Defendant. ) | |

## ORDER

Currently pending before the Court is Defendant/Third-Party Plaintiff's Motion for Summary Judgment (Doc. No. 73); Defendant/Third-Party Plaintiff's Motion for Partial Summary Judgment (Doc. No. 109); and Defendant/Third Party Plaintiff's Motion for Summary Judgment against Third-Party Defendant HBD. (Doc. No. 73). Each motion will be considered below.

**I. Facts.[1]**

This case involves the purchase and sale of 17 Hewitt 6918 flexible submarine hoses, used to transport Syrian heavy crude oil. These hoses were the subject of at least two contracts: (1) a contract between HBD Industries, Inc. ("HBD") and G.T. Sales &

---

[1]In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996). Accordingly, all facts set forth in the Court's statement of facts will be taken from defendant's motion for summary judgment (Doc. No. 73) and defendant's suggestions in support (Doc. No. 73) unless otherwise specified.

Manufacturing, Inc. d/b/a Hewitt U.S.A. ("Hewitt") and (2) a contract between Hewitt and plaintiff Global Petromarine ("Global") for the sale of the hoses to Syrian Crude Oil Transportation Co. ("Scotraco"), a non-party. Global is a limited liability company located in Tripoli, Lebanon and Hewitt U.S.A. is a fictitious named company registered in Missouri and operated by GT Sales & Manufacturing, Inc., a Kansas corporation. HBD is a Delaware corporation with its principal place of business in Salisbury, North Carolina.

This action commenced when Global filed suit against Hewitt on March 2, 2006 for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and negligent misrepresentation (Doc. No. 1). The series of contracts that occurred in this case is important to understanding how Global's claims evolved. First, Hewitt entered into a contract with HBD whereby HBD manufactured the hoses, tested them, and packaged them for shipment. Hewitt purchased the hoses from HBD for $96,500.00. Hewitt also purchased optional Kerosene testing of the hoses for $1,530.00 and shipping racks for $15,000.00 for a total purchase price of $113,030.00. Pursuant to the contract between Hewitt and HBD, thirteen mainline hoses were purchased for $5,600.00 each, and four tanker rail hoses were purchased for $5,925.00 each.

The second contract in this case was formed when Global entered into a contract with Hewitt whereby Hewitt sold Global the hoses it originally purchased from HBD. The parties also agreed that Global would act as Hewitt's representative in Lebanon and Syria in selling the hoses to Scotraco. Global purchased the hoses from Hewitt for $125,547.00. With additional charges for miscellaneous expenses, kerosene testing, etc., the total purchase price was $132,172.00. Global resold the hoses to Scotraco for $161,054, an

2

amount higher than it paid Hewitt.

On July 1, 2002, HBD shipped the hoses to Scotraco in Syria. Within 90 days after the installation of the first of the hoses, Global then reported that the installed marine hoses began leaking. (Plaintiff's Complaint, ¶ 23, Doc. No. 27). Global informed Hewitt of the leaking hoses and Hewitt asked Global to ship it sections of the marine hoses for testing in the United States. (Id. at ¶¶ 25-26). After testing the hoses, Hewitt refused to refund the purchase price or replace the leaking marine hoses. (Id. at ¶ 27). Global alleges that more hoses kept going out of service.[2] (Id. at ¶ 28). As a result, Global requested that Hewitt send a representative to Syria to inspect the hoses, but Hewitt refused. (Id. at ¶¶28-29). Because of Hewitt's refusal to replace the hoses or provide a refund, Global claims it was forced to purchase replacement hoses for Scotraco to substitute Hewitt's leaking hoses. (Id. at ¶ 34). Global paid $201, 906.00 for the replacement hoses. (Id. at ¶ 35). Thereafter, on May 2, 2006, Hewitt brought a third-party complaint against HBD to indemnify Hewitt for costs, fees, expenses, and damages because HBD designed, manufactured, tested, packaged, and shipped the subject hoses.

The facts surrounding the negotiations of the contract between HBD and Hewitt are laid out in the Court's September 17, 2007 Order (Doc. No. 85) and will not be repeated here. Hewitt now seeks summary judgment on all of Global's claims and alternatively, requests indemnification from HBD as manufacturer of the hoses.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the movant demonstrates that there is no

---

[2]Currently, hoses bearing serial numbers 9188 and 9194 are still installed. Hoses bearing serial numbers 9185, 9190, and 9192 have never been used.

3

genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

4

## III. DISCUSSION

Hewitt seeks summary judgment on all of Global's claims: (1) Breach of Contract, (2) Breach of Express Warranty, (3) Breach of Implied Warranty of Merchantability, (4) Breach of Implied Warranty of Fitness for a Particular Purpose, (5) Negligent Misrepresentation, (6) Rescission and Restitution, and (7) Attorney's Fees. The Court will first examine the choice of law issues before reaching the merits of plaintiff's claims.

As to the motions between Hewitt and HBD, the issues are (1) whether Hewitt has a right to indemnification from HBD; (2) whether Hewitt's potential right to recover implied-in-law indemnity from HBD is affected by the "exclusive remedy" provision contained in the 2-year prorated warranty document; (3) whether Hewitt effectively disclaimed implied warranties of merchantability and fitness for a particular purpose; and (4) whether the "exclusive remedy" provision contained within the applicable warranty is valid and enforceable under the Uniform Commercial Code. The Court previously decided in its September 17, 2007 Order (Doc. No. 85) that Missouri law, the place of contracting, applied to the contract between HBD and Hewitt. Thus, the Court will apply Missouri law to decide these issues of law before the Court.

### A. Choice of Law

A district court sitting in diversity jurisdiction applies the choice of law rules for the state in which it sits. Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 687 (8th Cir. 2001) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, we apply Missouri's choice of law rules. Missouri law "provides that the law of the state with the most significant relationship to the transaction and parties

5

govern." Viacom, Inc. v. Transit Cas. Co., 138 S.W.3d 723, 725 (Mo. 2004). Missouri has adopted Section 188 of the Restatement (Second) of Conflicts of Laws which states that the following factors should be considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id.; Restatement (Second) of Conflict of Laws section 188(2); See also Dillard v. Shaughnessy, Fickel & Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. App. W.D. 1997).

Based on these above factors, Global argues for application of Lebanese law because the alleged injury occurred in Lebanon, where the hoses leaked. Additionally, Global argues that the relationship between the parties is centered in Lebanon based on the representation agreement between Hewitt and Global. However, Hewitt contends that South Carolina law should apply to the contract because the issues related to the rights and liabilities created by an agreement for the sale of goods is to be determined by the local law of "the state" where goods are to be delivered. Since the hoses were to be delivered to Syria from South Carolina, Hewitt argues that South Carolina law should apply.

The Court finds that the Court is without sufficient information from which to conclude whether South Carolina or Lebanese law applies. Global offered no case support for why this Court should apply the law of a foreign country. In addition, although both parties mainly discussed the application of either Lebanese law or South Carolina law, there are other potential applications as well. For example, this Court could apply North Carolina law to interpret the contract since the hoses were manufactured, tested, packaged, and shipped from this state. Many of the central disputes in this case deal with

the manufacturing and testing of these hoses. Thus, North Carolina has a relationship to the dispute at hand.

Before the Court will make its determination, however, it hereby requires that Global and Hewitt submit a concise summary of which law should be applied to this case. The summary should be no more than 10 pages, double-spaced, 12 point size font. The parties shall submit the following information to the Court by **Wednesday, April 2, 2008:**

1. Both parties shall provide case law which discusses the application of foreign law where a party to the contract is a foreign entity or where the alleged injury occurs in a foreign jurisdiction. Both parties shall state their reasons why or why not Lebanese should apply using the Restatement factors and supporting case law.

2. Both parties should provide arguments and case support for and/or against application of law in the following states: Missouri, North Carolina, and South Carolina. The parties should again refer to the Restatement factors and any supporting case law.

**B.     Hewitt's Motion for Summary Judgment Against Global (Doc. No. 73)**

Regardless of which law applies, the Court finds that are genuine issues of material fact precluding Hewitt's summary judgment on all of Global's claims.

*1.     Breach of Contract*

Global asserts that Hewitt breached its sales contract by failing to provide Global with marine hoses that met the Oil Companies International Marine Forum ("OCIMF") specifications listed in the proforma invoice document sent to Global by Hewitt on December 19, 2001. Hewitt confirms through its representative, Bill Lesser, that the hoses

7

the manufacturing and testing of these hoses. Thus, North Carolina has a relationship to the dispute at hand.

Before the Court will make its determination, however, it hereby requires that Global and Hewitt submit a concise summary of which law should be applied to this case. The summary should be no more than 10 pages, double-spaced, 12 point size font. The parties shall submit the following information to the Court by **Wednesday, April 2, 2008:**

1. Both parties shall provide case law which discusses the application of foreign law where a party to the contract is a foreign entity or where the alleged injury occurs in a foreign jurisdiction. Both parties shall state their reasons why or why not Lebanese should apply using the Restatement factors and supporting case law.

2. Both parties should provide arguments and case support for and/or against application of law in the following states: Missouri, North Carolina, and South Carolina. The parties should again refer to the Restatement factors and any supporting case law.

**B.     Hewitt's Motion for Summary Judgment Against Global (Doc. No. 73)**

Regardless of which law applies, the Court finds that are genuine issues of material fact precluding Hewitt's summary judgment on all of Global's claims.

*1.     Breach of Contract*

Global asserts that Hewitt breached its sales contract by failing to provide Global with marine hoses that met the Oil Companies International Marine Forum ("OCIMF") specifications listed in the proforma invoice document sent to Global by Hewitt on December 19, 2001. Hewitt confirms through its representative, Bill Lesser, that the hoses

met all such specifications.

Global responds that Hewitt has not offered any evidence which establishes that the hoses complied with OCIMF specifications other than Bill Lesser's declaration. Global states it has submitted three expert reports which demonstrate that the hoses did not comply with the OCIMF 1991 Edition guidelines.

The Court finds that there is a genuine issue of fact as to whether the hoses sold to Global and Scotraco complied with the OCIMF 1991 Edition guidelines. This issue is central to Global's breach of contract claim and should be an issue for the jury to decide. Hewitt provided no evidence other than Bill Lesser's declaration that the hoses met the appropriate specifications. Such evidence is insufficient for this Court to grant summary judgment on Global's breach of contract claim. Further, Global is entitled to present its expert testimony at trial on the issue of whether the hoses complied with OCIMF specifications. Additionally, there are disputes as to which documents makeup the contract between the parties and whether the contract between Hewitt and Global was simply a representation agreement. Therefore, the Court hereby **DENIES** Hewitt's summary judgment on Global's breach of contract claim.

*2.     Breach of Express and Implied Warranties*

Global asserts claims for both breach of express warranty and breach of implied warranties for merchantability and fitness for a particular purpose. Hewitt contends the parties agreed to a 2-year prorated warranty which contains a limited warranty to repair or replace the defective product as well as a disclaimer for implied warranties. Hewitt claims that even if the 2-year prorated warranty never became a part of the contract, Hewitt's brochure contained a 90-day warranty in addition to a disclaimer of all implied warranties.

8

Thus, Hewitt argues that Global's implied warranty claims are barred by either the 2-year prorated warranty or the 90-day warranty contained within Hewitt's brochure.

Global responds that the contract contained no written express warranties, but that Hewitt's misrepresentations and many assurances constituted an express warranty as to the quality of the product. Global further argues that the implied warranties never became a part of the contract because of the parties' subsequent negotiations regarding warranties and the course of dealing.

The Court finds that genuine issues of material fact remain about what documents and terms make up the contract, including whether any written express warranty ultimately formed a part of the parties' agreement. Whether Global is entitled to recover for any implied warranties is contingent on whether the 90-day warranty or the proposed 2-year prorated warranty was a part of the contract. Therefore, the Court hereby **DENIES** Hewitt's motion for summary judgment on Global's claims for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.

### 3. *Negligent Misrepresentation*

Global has alleged that Hewitt made various false representations to Global in connection with the sale of the hoses. Global has alleged that Hewitt made the following misrepresentations, including but limited to: (1) Hewitt falsely represented to Global that Hewitt itself would be the manufacturer of the hoses; (2) Hewitt represented it had the capability of manufacturing offshore marine hoses per the requirements of the OCIMF Fourth Edition 1991; (3) Hewitt represented it was a manufacturer of submarine hoses in accordance with the OCIMF Fourth Edition 1991 specifications; (4) Hewitt represented that

9

it tested the hoses; (5) Hewitt represented it owned a manufacturing facility that is registered as an ISO 9001 facility; (6) Hewitt represented that it had no prior problems with submarine hoses; (6) Hewitt represented that all the hoses would be no of new materials and manufacture; (7) Hewitt represented that the hoses were tested in accordance with OCIMF Fourth Edition 1991 specifications and procedures; and (8) Hewitt represented that the hoses were manufactured in accordance with OCIMF Fourth Edition 1991 specifications and procedures.

Hewitt argues it is entitled to summary judgment on Global's negligent misrepresentation claim for two reasons: (1) Global's recovery under this claim is barred by the economic loss doctrine, and (2) proof of any damages would require expert opinion testimony and Global failed to disclose any expert testimony relating to its misrepresentation claim. First, Hewitt asserts that whatever damage is being claimed by Global consists of a loss that is solely economic in nature. Hewitt argues that regardless of which law applies, recovery by Global for any such loss is barred by the economic loss doctrine.

Second, Hewitt argues that proof of damages resulting from any allegedly false representations would require expert opinion testimony as to the fair market value of the hoses. Hewitt states the measure of damages is the difference between the actual value of the property at the time the contract was entered into and the property's value had the representation been true. Bruns v. Green, 157 S.W.3d 368, 372 (Mo. App. 2005). To do this, Hewitt argues Global needs expert opinions which estimate the market value of the hoses and Global has not designated such an expert. Hewitt claims that without this information, a misrepresentation claim without evidence of actual value is not submissible.

10

Maples v. Charles Burt Realtor, Inc., 690 S.W.2d 202, 214 (Mo. App. 1985). Since Global has not disclosed any expert who have such opinions, Hewitt argues it is entitled to summary judgment on its misrepresentation claim. Hewitt further notes that Global's representative, Mr. Zaouk, has stated that he does not intend to present any such opinions.

Lastly, Hewitt states that many of Global's misrepresentation claims are based on the premise that Hewitt represented that the hoses would be manufactured by Hewitt. Hewitt claims, however, that Global's principal, Mr. Zauok, was personally informed, that the manufacturer of the hoses was HBD industries.

Global responds that there are many genuine issues of material fact which prevent summary judgment on its negligent misrepresentation claim. First, Global notes that its misrepresentation claim is not just limited to Hewitt misrepresenting that it was the manufacturer. Global also claims that the actual manufacturer of the hoses did not meet specified historical records, qualifications, and capabilities represented by Hewitt. Second, Global contends that had it known Hewitt was not the manufacturer and hence that Global was not Hewitt's representative, it would not have entered into an agreement with Hewitt.

Global disagrees with Hewitt about the measure of damages. Global states it was buying hoses only to resell them to Scotraco and so, the benefit of the bargain for Global was the profit to be made by the difference between the purchase price and the resale price of the hoses. Thus, Global argues those damages are not to be assessed based on an expert opinion, but rather damages would be measured based on the loss of the benefit of the bargain and other expenses and damages incurred by Global to find replacement hoses and cover all payments. Global argues that because of Hewitt's misrepresentations, it had to incur additional charges to purchase replacement hoses for Scotraco. Global

11

further responds that it never confirmed that it does not intend to present any opinions as to the value of the hoses. Global stated it intends to have its principal testify as to the value of the hoses.

Lastly, Global argues that the economic loss doctrine is not a bar to its negligent misrepresentation claim because it had to settle Scotraco's claims which included damage to the marine environment, costly disruption of the work flow at the Tartous Terminal, and costs of removing and replacing failed hoses.

The Court finds that while there are issues of fact as to Global's negligent misrepresentation claim, the economic loss doctrine may serve to bar Global's claim regardless of the existence of factual disputes. The economic loss doctrine can be best explained as follows:

> The premise of the economic loss doctrine is that, although tort law is an appropriate vehicle for providing recovery for physical injury to person or to other property caused by defective goods, tort law should not be held to under the law of sales' balancing of the relationship between buyers and sellers regarding whether or not, and how well, products work. Recovery in tort is allowed for physical injuries caused by defective products because such injuries are unexpected and can be overwhelming to consumers, and because the risk of such injuries is best insured and distributed by manufacturers. The risk of losses not attributable to physical injury to persons or to other property, however, is better contractually allocated between sellers and particular purchasers through bargaining for desired warranties. Thus, purchasers may not recover in tort when defective products cause purely economic loss.

See Tioga Public School District #15 of Williams County v. United States Gypsum Co., 984 F.2d 915, 918 (8th Cir. 1993)(internal citations omitted). Whether Global's negligent misrepresentation claim is barred by the economic loss doctrine is dependent on the choice of law issue. Thus, once the parties submit their summaries on the choice of law issue and the Court determines which law applies, the Court will then issue a decision as to whether

Hewitt is entitled to summary judgment on the negligent misrepresentation claim based upon the economic loss doctrine. In addition, the issues relating to the proper of measure of Global damages and whether Global's recovery for the alleged misrepresentations require expert testimony are also contingent on the choice of law issue. Therefore, the Court **PROVISIONALLY DENIES** Hewitt's summary judgment motion (Docs. No. 73, 109) on Global's negligent misrepresentation claim pending determination of the choice of law issues.

### 4. Rescission and Restitution

Additionally, the Court finds that since Global's claims for rescission and restitution are based on Hewitt's alleged misrepresentations, denial of summary judgment on these claims is proper because there are genuine issues of material fact surrounding the alleged misrepresentations. There is a dispute as to whether Global knew HBD was the manufacturer of the hoses prior to entering into an agreement with Hewitt. There are also disputes as to whether the hoses met the OCIMF specifications, whether the hoses were tested properly in accordance with OCIMF specifications, whether HBD's manufacturing facility is registered as an ISO 9001 facility, and whether the hoses were indeed of new materials. Therefore, the Court **DENIES** Hewitt's summary judgment motion on plaintiff's rescission and restitution claims.

### 5. Attorney's Fees

Hewitt argues that Global is not entitled to any attorney's fees. Global argues that proper restitution in this case would include the award of attorney's fees. The Court finds that whether Global is entitled to attorney fees is dependent on the choice of law issue.

Therefore, the Court **PROVISIONALLY DENIES** Hewitt's summary judgment motion on plaintiff's claim for attorney's fees.

### C.. Hewitt's Motion for Summary Judgment Against HBD on the Issue of Implied Indemnity (Doc. No. 73)

Hewitt alternatively seeks summary judgment on its claim against HBD for indemnity. Not surprisingly, HBD argues that Hewitt has no right to indemnity under the sales contract and even if it does, Hewitt is limited to the exclusive remedy provision contained within the warranties.

Under the sales contract between Hewitt and HBD, there is no express indemnification provision. Thus, the only type of indemnity that Hewitt may seek against HBD is the equitable remedy of implied indemnity. "The right to implied indemnity depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer they may recover from him." See City of St. Joseph v. Kaw Valley Tunneling, Inc., 660 S.W.2d 26, 30 (Mo. App. 1983), citing Hunter v. De Luxe Drive-In Theaters, Inc., 257 S.W.2d 255, 259 (Mo. App. 1953); City of Springfield v. Clement, 205 Mo. App. 114, 126, 225 S.W. 120, 125 (1920); RESTATEMENT OF RESTITUTION § 76 (1937). Under Missouri law, the doctrine of implied indemnity applies only where an identical duty owed by one is discharged by the other. Id. (internal citations omitted). In other words, "the doctrine is inapplicable unless the indemnitee and indemnitor have co-extensive, identical duties. " Denny's Inc., WDH Serv. v. Avesta Enterprises, Ltd., 884 S.W.2d 281 (Mo. App. 1994), citing to St. Joseph, 660 S.W.2d at 31. In this case, this Court must examine where HBD's duty arises in connection with Global and where Hewitt's duty arises in connection

14

with Global. If these duties are co-extensive, identical duties, then Hewitt is entitled to implied indemnity from HBD.

HBD argues that the duties are not identical because HBD has no contractual duty to Global. Hewitt argues, however, that any liability on the part of Hewitt regarding compliance with OCIMF standards, the accuracy or completeness of test results, or the newness of the hoses will necessarily be based on a warranty theory that Hewitt gave a warranty. Further, Hewitt contends that since HBD manufactured, tested, and shipped the hoses, it should indemnify Hewitt. Thus, Hewitt argues any duty owed to Global by Hewitt would be based on a warranty and any duty owed by HBD to Global would also be based on a warranty, thereby making the duties coextensive.

The Court finds that Hewitt is not entitled to implied indemnity from HBD because Hewitt and HBD do not have co-extensive, identical duties with respect to Global as required under Missouri law. The Court agrees with HBD that HBD owes no contractual duty to Global and has no legal relationship with Global. HBD never contracted with Global for the purchase of the hoses. Rather, Hewitt had a separate contract with Global for the purchase of the hoses with separate terms and had a duty to Global to provide a product free from defects. The Court would also note that Hewitt's duty to Global is not necessarily based on a warranty since Global disputes that the 2-year prorated warranty applies. Further, Hewitt made separate representations and warranties to Global based upon the language in Hewitt's brochure, which contains a 90-day warranty. HBD did not provide the warranty contained within Hewitt's brochure to Global or Hewitt. It is also evident from the parties' negotiations that the parties did not intend for any type of indemnity to apply to the contract. The purpose of Hewitt negotiating the warranty with HBD was so that it could

15

transfer the same or similar warranty to Global in the event that there were any problems with the hoses. Thus, the Court concludes that the facts and circumstances of this contractual relationship do not justify implied indemnity between Hewitt and HBD where the indemnitor and the indemnitee do not have co-extensive, identical duties. Therefore, the Court hereby **DENIES** Hewitt's motion for summary judgment against HBD on the issue of implied indemnity. Because the Court finds that Hewitt is not entitled to implied indemnity, the Court will not determine the remaining issues of whether Hewitt is limited to the exclusive remedies in the warranty as these issues are now moot.

## IV. CONCLUSION

Therefore, for the foregoing reasons, it is hereby ORDERED that Defendant/Third-Party Plaintiff's Motion for Summary Judgment (Doc. No. 73) is **DENIED** as to Counts I,II,III,IV, and VI and **PROVISIONALLY DENIED** as to Count V pending determination of choice of law issues and Defendant/Third-Party Plaintiff's Motion for Partial Summary Judgment (Doc. No. 109) is **PROVISIONALLY DENIED** pending determination of choice of law issues. Parties are to file a response with the Court as to the choice of law issue by **Wednesday, April 2, 2008**. Additionally, Defendant/Third Party Plaintiff's Motion for Summary Judgment against Third-Party Defendant HBD is **DENIED**. (Doc. No. 73).

    **IT IS SO ORDERED.**

Date:   3/12/08                             **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri               Fernando J. Gaitan, Jr.
                                                 Chief United States District Judge